Burgess Stock Farm v. Percheron S. of A., 212 Ill. App. 132.

died by reason of injuries or illness received or caused by the performance of his duties as fireman.

For the reasons stated the judgment of the Circuit Court is affirmed.

*Affirmed.*

----

## Burgess Stock Farm, Appellee, v. Percheron Society of America, Appellant.

1. CORPORATIONS, § 329*—*when may refuse to enter into contract.* The registry in the books of a corporation, which is engaged in the private business of keeping records of pedigrees of imported horses and issuing certificates of such pedigrees on request, of a horse, is a matter of contract which the corporation can refuse, in its discretion, to enter into the same as an individual, and it may not be required by mandamus to enter into such a contract.

2. CORPORATIONS, § 170*—*when stockholder may not compel corporation to enter into contract.* The fact that a partnership, engaged in the business of dealing in horses and other live stock, owned a share of stock in a corporation engaged in the private business of keeping records of pedigrees of imported horses and issuing certificates of such pedigrees, and, when a corporation was formed by the members of the partnership, they caused the share of stock to be transferred to the latter corporation on the books of the former corporation, did not give such latter corporation any greater right to compel such former corporation by mandamus to enter into a contract with it than it would have had if it had not owned the share of stock.

Appeal from the Circuit Court of McLean county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded with directions. Opinion filed July 15, 1918. Rehearing denied October 2, 1918.

WINSTON, PAYNE, STRAWN & SHAW and BRACKEN & YOUNG, for appellant; SILAS H. STRAWN, JOHN D.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

BLACK, WILLIAM K. BRACKEN and CHARLES J. Mc-FADDEN, of counsel.

BARNES, MAGOON & BLACK, for appellee; FRED A. BANGS and STERLING & WHITMORE, of counsel.

MR. JUSTICE GRAVES delivered the opinion of the court.

The following facts are either admittedly true or are established by a preponderance of competent evidence introduced at the trial of the case: The parties to this suit are both private corporations organized under the laws of the State of Illinois. Appellant's business was to keep the records of the pedigrees of imported Percheron horses and to issue certificates of such pedigrees on request. From this business it derived a substantial part of its income. The success of its business depended largely on the correctness of these records and certificates. Appellee was in the business of dealing in horses and other live stock. The market value of certain horses handled by it depended in a considerable degree upon the pedigree of such horses. The records kept by appellant were recognized by horsemen as the best, if not the only, source of reliable information in this country as to the pedigrees of Percheron horses. Forty-nine fiftieths of the capital stock of appellee was owned by Robert Burgess and his son Charles Burgess, who prior to the formation of appellee corporation were under the name of Robert Burgess & Son, partners, engaged in the same business appellee is now engaged in. The other one-fiftieth of the capital stock was in the name of one I. F. Douglas, who paid nothing for it. The stock of appellee was paid for chiefly, if not wholly, by turning over to the corporation the property formerly owned and managed by Robert Burgess & Son. That firm while doing business under that name were owners of a small amount of stock in appellant corporation and during that time had sought to procure certain false registrations of pedi-

grees to be made on the books of appellant, and had sold at least one horse that was born in this country under a certificate of registration of an imported horse. For such irregularities appellant refused to permit the registration of any of the American bred horses whose registration required the signature of Robert Burgess & Son, or either of them, regardless of who owned the animal. The justice of the decision of appellant in refusing the registration of all American bred animals for Robert Burgess or Robert Burgess & Son was recognized by the firm, and Robert Burgess expressed his satisfaction with it, and told its board of directors at Des Moines that he was satisfied with it, and that the application in question should not have been made. The firm of Burgess & Son never applied for further registration of American bred animals. Later appellee corporation was formed for the purpose, as the witness McCumber testified Robert Burgess told him, of attempting to evade the rule of appellant against registering the pedigrees of horses for Burgess & Son. After the formation of the corporation known as the "Burgess Stock Farm" a resolution was passed by appellant to the effect that the same rule should be applied to that corporation as had been applied to the partnership of Burgess & Son in regard to the registration of stock, namely, that it would register no stock for such corporation that required the signature of either Robert or Charles Burgess, and appellant has consistently refused and still refuses to register such stock. In September, 1913, appellee made application for the registration in the books of appellant of an American bred colt called "Narcissa," which appellant refused to do, and gave as a reason for such refusal that its pedigree committee had made an order that all applications of this character made by appellee should be rejected, and that the directors of appellant had taken the position that the rules theretofore applied to Burgess & Son should be applied to the "Burgess Stock

Farm." Appellee then filed its petition for a writ of mandamus to compel appellant to register the colt "Narcissa" in its books. A trial was had before a jury and at the conclusion of all the evidence the court struck much of the evidence from the record and some of the pleadings from the files, and directed a verdict for the petitioner, and the writ of mandamus was .ordered, commanding appellant and all its officers to register the pedigree of the colt in question.

Appellant is a corporation organized for pecuniary profit. Its avowed business, from which it derived its profits, was "the preservation, recording and certifying of pedigrees of Percheron horses imported from France or bred in America." The success of its business depends upon the accuracy of its records. Its business is its own private affair. There is nothing in its charter, rules, by-laws or business to indicate that it partakes in any degree of a public or *quasi* public business. It transacted its business through its officers and directors acting as agents of the corporation. The transactions between it and its customers were contractual, and depend upon the voluntary meeting of minds of the contracting parties. If its board of directors did not consider it advantageous to deal with any customer, it had the undoubted right to decline to do so. The registry in its books of the pedigree of an animal was a matter of contract and was not a legal duty. It did not claim to have or keep a complete register of the pedigrees of all the Percheron horses in America, but did claim that such pedigrees as it did have registered were true and correct. The attempts of Burgess & Son, while doing business as a partnership, to procure the registration of incorrect pedigrees by appellant had been so persistent as to warrant appellant in suspecting that the same were not accidental but were intentional and fraudulent. Appellant is in no different situation with regard to its right to choose those with whom it will do business than a private individual would be. The right to con-

136        APPELLATE COURTS OF ILLINOIS.

Burgess Stock Farm v. Percheron S. of A., 212 Ill. App. 132.

tract or not to contract is, within limitations not affecting this case, a personal one that the individual may exercise his discretion about and that cannot be controlled by mandamus. *People v. Holstein-Friesian Ass'n,* 41 Hun (N. Y.) 439; *Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co.,* 224 Fed. 566; *Standard Oil Co. of New Jersey v. United States,* 221 U. S. 1; *Greater New York Film Rental Co. v. Biograph Co.,* 203 Fed. 39; *In re Grice,* 79 Fed. 627. And Cooley in his work on Torts says (page 278): "It is a part of every man's civil rights that he be at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice or malice."

The fact that Burgess & Son owned a share of stock in appellant corporation and when appellee corporation was formed Burgess & Son caused that share of stock to be transferred to it on the books of appellant does not give to appellee any greater right to compel appellant to enter into a contract with it than it would have had if it had not owned the share of stock. *People v. Dennett,* 276 Ill. 43-46.

In the view we take of this case, it is not necessary to determine whether charges were made against Burgess & Son or Burgess Stock Farm in exact conformity with the rules or by-laws of appellant, or whether the sins of Burgess & Son, the partnership, can be visited upon Burgess Stock Farm, the corporation. What we do hold is that appellant is a private corporation with the same power to transact its business as a private individual, and that it may contract or refuse to contract in regard to any specific matter not *ultra vires* its corporate powers the same as an individual, and that it cannot be compelled by mandamus to make any contract or to exercise its discretion in regard to making contracts in any particular way. The record shows, however, not only that the order or rule of appellant's board of directors, by which it was determined that it would no longer register the

pedigrees of animals for Burgess & Son, was made in substantial compliance with its constitution, rules and by-laws, but that Burgess & Son recognized and admitted the justice and binding force of the order and the truth of the facts upon which it was based, and that they have consistently acquiesced in the order ever since it was promulgated. The record also further conclusively shows that the corporation, Burgess Stock Farm, was in reality Burgess & Son under a different name, and that it was formed by Burgess & Son with the hope of escaping the consequences of the order of appellant by which it refused to register the pedigrees of their horses. The change of the style of the business organization from a partnership to a corporation did not change the characteristics of the individuals who owned and controlled the business. There is no regenerating influence arising from the process of organizing corporations that has so far been recognized as tending to make men reliable who were theretofore not so. The extension of the rule to the corporation was clearly within the rights of appellant.

It follows that appellee has failed to show any right to the writ of mandamus prayed for. The judgment of the Circuit Court is reversed and the cause is remanded to that court with directions to deny the writ.

*Reversed and remanded with directions.*