(69 App. Div. 127.)

## In re BLACKSTONE'S ESTATE.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

1. TRANSFER TAX—MONEY ON DEPOSIT—PROPERTY SUBJECT.
    Where a nonresident placed a large amount of stock in a foreign railway company with a New York trust company, to be sold, and allowed the proceeds of the sale to remain in the hands of such company, under an agreement that it should hold the fund in trust, paying interest thereon, and should deliver all or any part of the fund to him on two days' notice, such property was within the state, and subject, at his death, to the transfer tax.

2. SAME—APPRAISEMENT—APPEAL BY CITY COMPTROLLER.
    As the comptroller of the city of New York has authority to institute proceedings to enforce the transfer tax, he has authority to appeal from the decision of the surrogate, although the powers in respect thereto had devolved on the comptroller of the state.

Appeal from order of surrogate, New York county.

In the matter of the appraisal of the property of Timothy B. Blackstone, deceased. From an order of the surrogate (72 N. Y. Supp. 59) declaring the transfer of certain property exempt from taxation, the comptroller of the city of New York appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

Thomas Penny, for appellant.
Edward W. Sheldon, for respondent.

HATCH, J. Timothy B. Blackstone, whose estate is sought to be taxed under the transfer tax law in this proceeding, was a resident

of the city of Chicago, in the state of Illinois, and died in said city on the 26th day of May, 1900, leaving a last will and testament. For 34 years prior to March, 1899, he had been the president of the Chicago & Alton Railroad Company, a corporation formed under the laws of the state of Illinois. On the 29th day of March, 1899, the decedent, having concluded to sell his holdings of stock in said corporation, forwarded the same to the United States Trust Company, a corporation organized under the laws of the state of New York. 26,537 shares of said stock were sold, pursuant to an agreement entered into before the delivery of the stock to the trust company, which sale produced a large sum of money. $4,881,522.21 of the proceeds of such sale was, by arrangement with the trust company, placed in its hands, and credited to the deceased; the agreement with the trust company in reference thereto being that the trust company should hold the same subject to the order of the decedent, pay interest thereon at the rate of 2½ per cent. per annum, and repay the principal upon demand, providing, however, that notice of not less than two days should be given to said trust company before any portion of such money exceeding in amount the sum of $100,000 should be demanded. On the date of the death of the decedent, there was due to him from the trust company of such moneys, principal and interest, $4,843,456.72. There was also due to the decedent from Cuyler, Morgan & Co., bankers of the city of New York, $10,692.24, being the balance of a deposit account kept with said firm. The will of the deceased was duly admitted to probate in Cook county, in the state of Illinois. By its terms he made various specific bequests, in the sum of $800,000, to collateral relatives, and to persons not related to the testator, and also to certain benevolent, charitable, and educational institutions located without the state of New York. The residue of his estate he gave to his widow, Isabella F. Blackstone. On the 10th day of November, 1900, an application was duly made by the comptroller of the city of New York, upon a petition duly verified, setting forth the jurisdictional facts, as required by the transfer tax law, to the surrogate of the county of New York for the designation of an appraiser to fix the market value of the property of the deceased within this jurisdiction which was subject to the payment of the tax under the transfer tax law of this state. The surrogate acted thereon, and appointed an appraiser, as required by the act, and such proceedings were thereafter had as resulted in a determination by the appraiser that the two sums of money deposited with the United States Trust Company and with Cuyler, Morgan & Co., amounting in the aggregate to $4,553,609.58, were subject to the payment of the tax as prescribed by the act. From the determination of the appraiser an appeal was taken by the executor of the estate to the surrogate, who reversed the determination of the appraiser, holding that the said sums of money were not subject to any transfer tax under the laws of the state of New York, but were exempt therefrom. An appeal from the order of the surrogate brings the matter into this court.

Every question presented by this appeal has been settled by decisive authority. The facts as presented in Re Houdayer's Estate,

150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. Rep. 642, involve, in principle, every question presented by the facts in this case, and arose under substantially the same circumstances. The deposits were held to be money, for all practical purposes, owned by the decedent at the time of his death, and as such taxable under the transfer tax act of the state. Other authorities support this view. In re Romaine, 127 N. Y. 80, 27 N. E. 759, 12 L. R. A. 401; In re Whiting's Estate, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. Rep. 640; In re Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632.

It is urged that the comptroller is without authority to prosecute this appeal. Such question was settled adversely to the contention of the respondent upon the motion to dismiss the appeal in this case, where it was held that, as the comptroller of the city of New York was authorized to institute the proceeding, he had authority to prosecute the appeal from the decision of the surrogate, although the powers and duties in respect thereto had devolved upon the comptroller of the state. Such condition would authorize a substitution of the comptroller of the state, but until such substitution is had the proceeding was properly prosecuted by the officer instituting it.

These are the only questions presented upon this appeal. It follows, therefore, that the order of the surrogate should be reversed, and the report of the appraiser confirmed, with $10 costs and disbursements to the appellant. All concur.